IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Nina Y. Wang**

Civil Action No. 21-cv-00983-NYW

L.A.M.,

     Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[1]

     Defendant.

---

## MEMORANDUM OPINION AND ORDER

This civil action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33, for review of the final decision of the Commissioner of Social Security Administration (the "Commissioner" or "Defendant") denying the application for Disability Insurance Benefits ("DIB") filed by L.A.M. ("Plaintiff" or "L.A.M.").[2]   After carefully considering the Parties' briefing, the Administrative Record, and the applicable case law, the court respectfully **AFFIRMS** the Commissioner's decision.[3]

---

[1] On July 9, 2021, President Biden appointed Kilolo Kijakazi as Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Kijakazi should be substituted for Andrew M. Saul, former Commissioner of Social Security, as the defendant in this suit.  No further action need be taken to continue this suit pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiffs by initials only."  D.C.COLO.LAPR 5.2(b).  Accordingly, this court refers to Plaintiff using her initials only.

[3] This civil action was originally assigned to the undersigned Magistrate Judge for a decision on the merits pursuant to the Parties' consent. [Doc. 9].  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73;

## BACKGROUND

Plaintiff alleges that she became disabled on December 28, 2018 due to a pinched nerve in her neck; pain in her left shoulder and left arm; arthritis; depression; and a fractured ankle and knee. *See* [Doc. 10-5 at 188; Doc. 10-6 at 217].[4] She alleges that these conditions, which required impromptu work breaks, led her to quit her last job as a certified nursing assistant ("CNA") on December 28, 2018. [Doc. 10-2 at 45-46; Doc. 10-6 at 217]. Given her various ailments, Plaintiff filed an application for DIB on April 12, 2019. *See* [Doc. 10-5 at 188]. The Social Security Administration denied Plaintiff's application initially on July 30, 2019, [Doc. 10-3 at 86], and again upon reconsideration on November 13, 2019. [*Id.* at 87]. Plaintiff submitted a request for a hearing before an Administrative Law Judge on December 18, 2019, *see* [Doc. 10-4 at 137], which was held before Administrative Law Judge Matthew C. Kawalek (the "ALJ") on September 29, 2020. [Doc. 10-2 at 31].

Following the hearing, the ALJ issued a decision on October 20, 2020, finding that Plaintiff met the insured status requirements of the Act through December 31, 2023 and that she had not engaged in substantial gainful activity as of her alleged disability onset date of December 28, 2018. [*Id.* at 14]. The ALJ determined that Plaintiff had the following severe impairments:

> degenerative disc disease, stenosis, spondylosis, and neuroforaminal narrowing of the cervical spine with radiculitis statute post fusion; bursitis and rotator cuff tendonitis of the left shoulder; status post left calcaneal fracture; status post nondisplaced fracture of the right femur lateral condyle; plantar nerve lesion of the right lower extremity; hammertoes of the right foot; chronic obstructive pulmonary

---

D.C.COLO.LCivR 72.2. On July 22, 2022, Judge Nina Y. Wang was appointed as a United States District Judge and retained assignment to this action as the presiding judge. [Doc. 16].

[4] When citing to the Administrative Record, the court utilizes the docket number assigned by the Electronic Court Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the ECF system.

disease ("COPD") or chronic respiratory failure with hypoxia; asthma; and neuropathy.

[*Id.* at 14-15].  The ALJ concluded that these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities.  [*Id.* at 15].  However, the ALJ determined that Plaintiff was not disabled because her residual functional capacity ("RFC") permitted her to perform a reduced range of sedentary work as defined in 20 C.F.R. § 404.1567(a),[5] with the following limitations:

> [T]he claimant can occasionally lift/carry 10 pounds and frequently lift/carry less than 10 pounds.  She can stand and/or walk 2 hours and sit 6 hours of an 8-hour workday.  The claimant can never crawl or climb ladders, ropes, or scaffolds, and she can frequently stoop, kneel, crouch, or climb ramps and stairs.  She can frequently reach, handle, finger, feel, or operate hand controls with the bilateral upper extremities.  She can tolerate no more than frequent exposure to temperature extremes or pulmonary irritants, and she can have no exposure to hazards.

[*Id.* at 18].

Plaintiff requested review of the ALJ decision, *see* [Doc. 10-2 at 7-8], which the Appeals Council denied on February 24, 2021, [Doc. 10-2 at 1-3], rendering the ALJ's decision the final decision of the Commissioner.  Plaintiff then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on April 7, 2021.  [Doc. 1].  Because this matter is ripe for consideration, I consider the Parties' arguments below.

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

## LEGAL STANDARDS

An individual is eligible for DIB benefits under the Act if he or she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove that she was disabled prior to her date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 13382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905. When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step sequential evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the RFC to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. SSR 83-10, 1983 WL 31251, at *7 (SSA 1983). "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 (SSA 1996) ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")). The ALJ need not identify "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

Plaintiff identifies several issues in the ALJ's decision which she argues warrant remand. *See generally* [Doc. 11 at 3-21]. Specifically, Plaintiff asserts that the ALJ erred by (1) determining that Plaintiff could perform her past relevant work, both as actually and generally performed, [*id.* at 4-6]; (2) finding that Plaintiff had no mental limitations, [*id.* at 7]; (3) finding that Plaintiff had the RFC to perform sedentary work based on his conclusion that Plaintiff could frequently use her upper extremities, [*id.* at 11]; and (4) finding the opinions of four medical sources unpersuasive. [*Id.* at 14-15]. In response, the Commissioner argues that the ALJ's decision is properly supported by substantial evidence and complies with all applicable legal standards and regulations. *See generally* [Doc. 14]. For the reasons set forth throughout this Order, I agree with the Commissioner that remand is not warranted here.

## I.    Past Relevant Work as Actually and Generally Performed

First, Plaintiff contends that the ALJ erred in determining that Plaintiff could perform her past relevant work, either as actually or generally performed. [Doc. 11 at 4-5]. Specifically,

Plaintiff argues that the ALJ failed to adequately develop the record at phase four of the sequential process because he failed to elicit sufficient testimony from her at the hearing. [*Id.* at 4].[6]   She further argues that her work history reports, *see* [Doc. 10-6 at 227-28, 300], which describe the physical requirements of her former jobs, are insufficient to constitute "substantial evidence" to "carry the ALJ's burden" at step four. [Doc. 11 at 4-5]. The Commissioner does not directly respond to Plaintiff's first argument, but asserts that Plaintiff has failed to explain *why* the work history reports do not constitute substantial evidence supporting the ALJ's decision, and thus, the issue is not adequately briefed for the court's review. [Doc. 14 at 20].

At step four, it is L.A.M.'s burden to establish that she is unable to perform her past relevant work "*both* as she actually performed that work in the past *and* as it is generally performed in the national economy." *Adams v. Colvin*, 616 F. App'x 393, 394 (10th Cir. 2015) (emphasis in original). Past relevant work is work that is (1) performed by the claimant within the last 15 years; that (2) was substantial gainful activity; and which (3) lasted long enough for the claimant to learn to do it. *See* C.F.R. § 416.960(b)(1). The Tenth Circuit has held that "past relevant work" includes not only the claimant's particular former job, but also her "former occupation as that occupation is generally performed throughout the national economy." *Andrade v. Sec'y of Health & Hum. Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993). Thus, "actual performance" refers to whether Plaintiff can do her past relevant work as she actually performed it while was working that job, whereas "general performance" looks at the demands and duties that are generally required by employers throughout the national economy. SSR 82-61, 1982 WL 31387, at *2 (SSA 1982).

---

[6] While L.A.M. says that the ALJ "did not develop the record at phase two as required," [Doc. 11 at 4], the court assumes that L.A.M.'s argument is raised with respect to step four of the sequential process. As Plaintiff herself states, *see* [*id.* at 3], whether a claimant can perform her past relevant work is determined at step four. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing past relevant work, the ALJ must consider (1) the plaintiff's RFC, (2) the physical and mental requirements for her past jobs, and (3) the claimant's ability to return to a past job given her RFC. *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) (citing SSR 82-62, 1982 WL 31386, at *3 (SSA 1982)). If the claimant has the RFC to do her past relevant work, the claimant is not disabled. *See Andrade*, 985 F.2d at 1050. But if the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1213 (10th Cir. 2004) (agreeing that had the plaintiff established that he could not perform his past relevant work, "moving to step five would be appropriate").

### A.    Past Relevant Work as Actually Performed

First, L.A.M. argues that the ALJ failed to adequately develop the factual record before determining that she could perform her past relevant work as actually performed. [Doc. 11 at 4]. Plaintiff asserts that during the hearing, "the ALJ did not develop the record . . . but only thanked [Plaintiff] for her 'brief' testimony about where she had worked, and then immediately asked the [vocational expert ("VE")] whether any further information was necessary." [*Id.*]. The exact nature of Plaintiff's argument and her basis for arguing that this is reversible error is unclear. She asserts that occupational information such as VE testimony "cannot be used to fill in missing information about . . . job requirements," [*id.* at 6], but does not identify any specific information that she believes was missing from her testimony or that the ALJ failed to elicit. *See generally* [*id.*]. She also suggests generally that the ALJ has a duty to be informed about the "facts relevant to his decision" and "the claimant's own version of those facts," [*id.* at 4-5 (quoting *Henrie*, 13 F.3d at 361)], but does not clearly explain how the ALJ failed to meet this duty here. [*Id.*].

Absent developed argument from Plaintiff, the court finds no reversible error here.  To be sure, the ALJ " has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie*, 13 F.3d at 360–61.  "[T]his duty requires the ALJ to review the claimant's residual functional capacity 'and the physical and mental demands of the work [she has] done in the past.'"  *Id.* at 361 (quoting 20 C.F.R. § 404.1520(e) (alterations in original).  "[T]he ALJ need not pursue every potential line of questioning" at the hearing.  *Lanoue v. Commissioner*, No. 18-cv-0328-MSK, 2019 WL 396904, at *2 (D. Colo. Jan. 30, 2019).  Rather, "what matters is whether sufficient questions were asked 'to ascertain (1) the nature of the claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities."  *Id.* (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)).

While Plaintiff challenges the ALJ's choice to ask Plaintiff, briefly and at the beginning of the hearing, about her work tasks during her employment as a CNA before asking the VE if she had sufficient information to classify Plaintiff's past work, *see* [Doc. 10-2 at 40-41], Plaintiff does not explain why this renders the record inadequate or why this amounts to reversible error.  *See generally* [Doc. 11].  The court notes that at the beginning of the hearing, the ALJ informed Plaintiff that he would ask "about [Plaintiff's] work history up front" to "make sure [he had] the correct information."  [Doc. 10-2 at 38].  Then, after briefly questioning Plaintiff about her previous work tasks, the ALJ then asked the VE whether the VE needed more information to classify L.A.M.'s previous jobs based on the information provided by L.A.M. and her "pretty detailed work history report.  [*Id.* at 40-42].  The VE confirmed that she did not need additional information.  [*Id.* at 41-42].  Plaintiff's attorney then thoroughly questioned Plaintiff about her past

work, including how she was limited in performing that work, and the work she believed she could perform. *See* [*id.* at 45-53]. The ALJ then questioned Plaintiff about her daily activities, [*id.* at 53-55, before questioning the VE about hypothetical work placements and restrictions. [*Id.* at 58-63]. Because Plaintiff does not explain why the ALJ's hearing questions were insufficient for the ALJ to ascertain Plaintiff's impairments, her treatment, and the impact of her limitations on her daily activities, *see Thompson*, 987 F.2d at 1492, or how the ALJ otherwise failed to develop the record, the court cannot conclude that the ALJ failed to meet his duties here. *See Taylor v. Astrue*, No. 11-cv-01425-CMA, 2012 WL 1520179, at *3 (D. Colo. Apr. 30, 2012) (affirming the Commissioner's decision where the plaintiff had "fail[ed] to explain why many of the[] errors [were] prejudicial or even legally relevant.").

Similarly, while Plaintiff asserts that her work history reports "do[] not provide substantial evidence to carry the ALJ's burden to make a step four finding," *see* [Doc. 11 at 5], Plaintiff does not clearly explain the basis of this argument. The court notes that Plaintiff, not the ALJ, carries the burden at step four. *Neilson*, 992 F.2d at 1120. In any event, to the extent that Plaintiff's argument can be construed as an assertion that because the ALJ failed to develop the record at the hearing, he must have relied upon her work history reports in reaching his decision on past relevant work, the court notes that the ALJ did not cite to Plaintiff's work history reports in his decision. *See* [Doc. 10-2 at 24-25]. Because there is no clear indication that these reports formed the basis for his decision, Plaintiff's argument concerning the weight of those reports does not demonstrate error.

Finally, Plaintiff asserts that the ALJ "failed to follow the mandate of [SSR 82-62]." [Doc. 11 at 5]. As noted by Plaintiff, *see* [*id.* at 4], the Tenth Circuit has interpreted this ruling as requiring the ALJ to make specific factual findings regarding (1) the claimant's RFC; (2) the

physical and mental demands of the claimant's prior jobs; and (3) the claimant's ability to return to past work given his or her RFC. *Henrie*, 13 F.3d at 361.  Because Plaintiff does not explain how the ALJ failed to make these findings, *see* [Doc. 11], the court cannot conclude that remand is warranted on this basis. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of our review . . . is limited to the issues the claimant . . . adequately presents on appeal." (internal quotation marks omitted)).

### B.      Past Relevant Work as Generally Performed

In the alternative, Plaintiff argues that the ALJ erred in determining that she could perform past relevant work as performed generally in the national economy.  [Doc. 11 at 5].  In his decision, the ALJ concluded that Plaintiff "is capable of performing past relevant work as a customer service representative (DOT 239.562-014, sedentary, SVP 5)."  [Doc. 10-2 at 24].  Plaintiff notes that there is no such listing as DOT 239.562-014 and argues that the ALJ's use of the wrong DOT number, based on VE testimony, amounts to reversible error.  [Doc. 11 at 5].  The Commissioner argues in response that this is a harmless error, as the VE and the ALJ likely intended to reference DOT 239.**3**62-014, which is a skilled, sedentary customer service job that Plaintiff is fit to perform. [Doc. 14 at 21].

In arguing that this error warrants reversal, Plaintiff relies upon *Etcitty v. Saul*, No. CV 18-1148 CG, 2019 WL 3451489 (D.N.M. July 31, 2019).  *See* [Doc. 11 at 5].  In *Etcitty*, the court found that remand was warranted where the ALJ relied upon the VE's use of the wrong DOT number in determining that the claimant was not disabled.  2019 WL 3451489, at *7.  There, however, the incorrect DOT number corresponded with a type of work which was inconsistent with the exertional abilities that the ALJ had assigned to the claimant, and the ALJ failed to reconcile this inconsistency in concluding that the claimant was not disabled. *Id.* at *6.  The court

concluded that the error could not be overlooked, as the determination that the claimant was not disabled was based "solely on [the ALJ's] conclusion that [the claimant] could have performed the job" associated with the incorrect DOT number. *Id.* ("The Court will not uphold [the ALJ's] decision when the only work [the claimant] could have allegedly performed cannot be identified in the DOT"). In contrast, here, the ALJ "correctly identified the position as sedentary." *Kevin L.W. v. Saul*, No. 18-cv-481-JED-JFJ, 2020 WL 6445091, at *2 (N.D. Okla. Nov. 3, 2020) (finding harmless error in the use of the wrong DOT number where the ALJ had properly identified the position as sedentary and properly reproduced the VE's testimony regarding the number of jobs for that position).

Furthermore, Plaintiff has failed to explain why referencing an incorrect DOT number affected the outcome of this case in a manner that warrants reversal. *See* [Doc. 11 at 5-6];[7] *see also Kevin L.W.*, 2020 WL 6445091, at *2 ("The plaintiff has not explained how the one-digit mistake impacted the vocational expert's testimony or the ALJ's decision."); *Star v. Colvin*, No. 12-cv-201-FHM, 2013 WL 1788581, at *2 (N.D. Okla. Apr. 26, 2013) ("Plaintiff has failed to demonstrate how citing to the wrong DOT number but naming the proper job title affected the outcome of this case. The misstatement by the vocational expert does not constitute reversible error."); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005) (holding that harmless error

---

[7] Instead, L.A.M. argues that "the job cannot be done as generally performed because there is no DOT number or VE testimony to define it, as required under SSR 82-61." [Doc. 11 at 5-6]. SSR 82-61 provides that DOT numbers may be relied upon to define a job as it is usually performed in the national economy, but also describes "composite jobs" which have "significant elements of two or more occupations" that do not have DOT counterparts. SSR 82-61 1982 WL 31387, at *2 (SSA 1982). The Commissioner has clarified that because composite jobs do not have DOT counterparts, they cannot be used to evaluate past work as generally performed at step four. *See* POMS DI 25005.020(B). Plaintiff does not argue that her past work constitutes a composite job, and the court is respectfully not persuaded that a typographical or numerical error in the given DOT number gives rise to the same policy considerations underlying the Commissioner's guidance that composite jobs cannot be used to evaluate past work as generally performed.

analysis is appropriate in Social Security disability proceedings when the error would have no effect on the outcome of the case). In light of this precedent, the court is persuaded that the one-digit numerical error warrants reversal.[8] Accordingly, the court declines to remand on this basis.

## II.   Mental Limitations

Next, Plaintiff argues that the ALJ erred in finding that Plaintiff had no mental limitations affecting her RFC. [Doc. 11 at 7]. Plaintiff asserts that such a finding "ignores and misinterprets" the medical evidence in the record. [*Id.*]. Plaintiff's argument appears to have four separate bases: (1) the ALJ erred in relying on Plaintiff's daily activities of taking a vacation and caring for others in the mental-limitation determination, [*id.*]; (2) the ALJ "failed to consider the medical evidence when he found there were no longitudinal mental health limitations," [*id.* at 8-9]; (3) "no authority is cited by the ALJ for his proposition that only formal in-person psychotherapy qualifies as mental health treatment, so severity was not established," [*id.* at 10], and (4) the ALJ failed to consider her "persistent attempts to obtain relief of symptoms." [*Id.*].

### A.   Plaintiff's Daily Activities

First, Plaintiff argues that the ALJ's reliance on her daily activities of taking a weekend vacation and caring for others does not amount to substantial evidence supporting his decision that she had no mental limitations because "the ALJ stretched the truth." [Doc. 11 at 7]. Plaintiff does not expound on this argument, aside from asserting that "[w]hen properly considered under the record evidence, [her] activities are more consistent with her claims of significant mental limitations than with the ALJ's conclusion that she can work full-time." *See* [*id.*]. Specifically,

---

[8] Plaintiff argues that the Commissioner's provision of the correct DOT number "is nothing more than post hoc rationale to explain away the ALJ's error based on little more than speculation." [Doc. 15 at 2]. The court respectfully disagrees that the clarification provided in the Commissioner's Response is an improper attempt to rationalize the ALJ's decision.

Plaintiff asserts that the ALJ's statement that Plaintiff "told [Carla Hoskins, a licensed professional counselor ("LPC")] that she was taking care of her girlfriend with stage four cancer as well as helping to take care of her father who has Alzheimer's" is contradicted by other record evidence in LPC Hoskins's notes, wherein LPC Hoskins stated that Plaintiff was "severely limited in what she can do to assist other people and would not be able to physically care for her dad or her girlfriend." [*Id.* at 8 (citing [Doc. 10-8 at 794])]. According to Plaintiff, the ALJ's failure to reconcile this inconsistency amounts to reversible error. [*Id.*].

The court is unpersuaded by Plaintiff's arguments. First, although Plaintiff suggests that the ALJ "stretched the truth" in finding that Plaintiff's daily activities supported a determination that Plaintiff had no mental limitations and contends that the weight of the record evidence supports her claims of significant mental limitations, this court cannot reweigh the evidence that was presented before the ALJ. *See Smith*, 821 F.3d at 1266. Moreover, insofar as Plaintiff contends that the ALJ failed to reconcile an inconsistency between his findings and LPC Hoskins's notes, there is no inherent inconsistency in his classification of LPC Hoskins's notes and the notes themselves. The ALJ referenced LPC Hoskins's notes in the course of discussing Plaintiff's *mental* limitations: "Those mental status exams also reflect a greater degree of function than opined by LPC Hoskins, including her notations that the claimant was caring for family members and taking vacations." [Doc. 10-2 at 15]. This is an accurate recounting of LPC Hoskin's notes, which reflect that Plaintiff had reported to LPC Hoskins that she was taking care of her girlfriend and her father. [Doc. 10-8 at 794, 834]. LPC Hoskins's additional notation that Plaintiff had also reported that she was not *physically* able to care for her family members, *see* [*id.*], is not inherently inconsistent with the ALJ's observation and there was thus no inconsistency to resolve. Even if there were, the court is not convinced that the ALJ's failure to discuss this notation from LPC

Hoskins's notes amounts to reversible error.  *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (the ALJ is not required to discuss every piece of evidence); *Thomas v. Berryhill*, 685 F. App'x 659, 661 (10th Cir. 2017) ("Although the record also contains evidence that her daily activities are more limited, the ALJ is in the best position to resolve such conflicts in the evidence.").

### B.      Failure to Consider Medical Evidence

Next, L.A.M. argues that "the ALJ failed to consider the medical evidence when he found there were no longitudinal mental health limitations," and further contends that "[t]he ALJ must have misunderstood the nature and extent of Plaintiff's health limitations" and that the ALJ "misstate[d] the medical evidence."  [Doc. 11 at 8-9].  Specifically, Plaintiff argues that the ALJ misstated the record evidence when he said that her primary care provider prescribed her Xanax and trazodone to treat her symptoms, as her medical records "show more than just [these medications] were prescribed."  [*Id.* at 9].  In support of her argument, Plaintiff lists eight medications which she asserts were "all for treatment of . . . major depression, PTSD, and generalized anxiety disorder" and notes that she was also referred for psychotherapy.  [*Id.*].  In addition, Plaintiff argues that the ALJ's finding that she managed her mental health symptoms by playing video games was "not fully factual" because she "also stated that she can concentrate for only 20-30 minutes," and only "sometimes" plays video games.  [*Id.* at 9-10].

Plaintiff does not explain why the ALJ's failure to list every medication that Plaintiff was prescribed to treat her mental-health symptoms warrants reversal or necessarily results in a conclusion that the decision was not supported by substantial evidence.  *See* [*id.* at 9-10].  Undeveloped arguments not clearly supported by substantive argument are deemed waived.  *See Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013).  Absent any substantive argument from

Plaintiff, the court is not persuaded that the ALJ's failure to list every medication prescribed to Plaintiff warrants reversal, particularly where the ALJ nevertheless considered the fact that Plaintiff had been prescribed medications to treat her mental-health symptoms. *See Eacret v. Barnhart*, 120 F. App'x 264, 267 (10th Cir. 2005) (affirming ALJ decision where the ALJ "recognized that [the claimant] had been prescribed psychotropic medication, although he did not list every such medication she had been prescribed'); *Clifton*, 79 F.3d at 1009-10.

Similarly, Plaintiff does not substantively explain why the ALJ's statement that Plaintiff "managed her symptoms by playing video games" is "not fully factual," nor does she explain why this amounts to reversible error. [Doc. 11 at 9-10]; *Chambers*, 389 F.3d at 1142. While Plaintiff asserts that "[t]he ability for sustained concentration and attention is best assessed in a work setting," [Doc. 11 at 10], the ALJ's statement concerning video games was made in the context of Plaintiff's management of her mental-health symptoms, not her ability to sustain concentration in a work setting. [Doc. 10-2 at 15-16]. Moreover, the court notes that the ALJ's statement is not inconsistent with the record, where medical records note that Plaintiff "reported [that] playing video games helps manage [her] symptoms at times." [Doc. 10-8 at 850]. Accordingly, the court does not find reversible error here.

### C.    Formal In-Person Psychotherapy

Plaintiff next asserts that "no authority is cited by the ALJ for his proposition that only formal in-person psychotherapy qualifies as mental health treatment, so severity was not established." [Doc. 11 at 10]. While Plaintiff cites to page 15 of the ALJ's decision, *see* [*id.*], the court has reviewed the ALJ decision and has found no such "proposition" from the ALJ, on page

15 or the surrounding pages. *See* [Doc. 10-2 at 14-18].[9]  And even though Defendant highlighted this discrepancy in her Response, *see* [Doc. 14 at 12 n.5], Plaintiff did not clarify the citation or the referenced statement in her reply. *See* [Doc. 15].  Accordingly, Plaintiff has demonstrated no basis for remand here. *Chambers*, 389 F.3d at 1142.

### D.   Additional Factors Not Considered

Finally, L.A.M. contends that the ALJ failed to consider Plaintiff's "persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources." [Doc. 11 at 10].  But Plaintiff does not identify any specific record evidence demonstrating "persistent attempts to obtain relief of symptoms" that she maintains the ALJ failed to consider.  [*Id.*].  As explained above, the court is not required to consider undeveloped arguments without supporting argument or citations to the record. *See Tietjen*, 527 F. App'x at 709.  Without developed, supported arguments from Plaintiff explaining how the ALJ failed to consider relevant record evidence, the court simply cannot conclude that the ALJ overlooked that evidence. *See Cagle v. Colvin*, No. CIV-12-494-F, 2013 WL 3974100, at *4 (W.D. Okla. July 31, 2013) ("Plaintiff provides no specific examples of what evidence was overlooked and does not cite to any evidence in the record. . . . This undeveloped argument defies meaningful judicial review.").

---

[9] The closest statement to Plaintiff's characterization that the court could locate was the ALJ's statement that "LPC Hoskins also saw the claimant only three times. . . . This minimal treatment is inconsistent with the degree of limitation alleged by the claimant." [Doc. 10-2 at 15].  But the court will not assume that this statement is the one to which Plaintiff refers. Plaintiff, who is represented by counsel, is not entitled to a liberal construction of her pleadings, *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994), and it is not the court's role to make arguments on behalf of Parties that they have not made themselves. *Villa Maison Homeowners Ass'n, Inc. v. Owners Ins. Co.*, No. 17-cv-01542-RM-KMT, 2018 WL 11182672, at *1 (D. Colo. Aug. 31, 2018) ("Unfortunately for plaintiff, the Court cannot make-up arguments on its behalf; that is counsel's job.").

### III.  Plaintiff's RFC With Respect to Her Upper Extremities

Next, Plaintiff argues that the ALJ's finding that Plaintiff could frequently use her upper extremities is not supported by substantial evidence.  [Doc. 11 at 11-12].  Specifically, Plaintiff states that in his decision, the ALJ "extensively" cited a single April 2019 neurological exam that the ALJ characterized as a "normal" physical examination, but which Plaintiff maintains actually shows Plaintiff's "limitations from pain, numbness, and a lack of range of motion in the left arm and its cause - the cervical neck impairments."  [*Id.* at 12].  For these reasons, Plaintiff asserts that the ALJ's decision was inconsistent with and contradicted by the medical evidence.  [*Id.*].[10]

Plaintiff does not provide a record citation for the subject April 2019 neurological exam, *see* [*id.*], but based on an independent review of the record, the court believes that Plaintiff refers to treatment notes from the Center for Neurology and Spine reflecting Plaintiff's visit with Dr. Jeffrey S. Gitt on April 3, 2019.  *See* [Doc. 10-7 at 319-20].  These treatment notes reflect that Plaintiff complained of pain and numbness in her arm and a diminished range of motion of her left shoulder.  [*Id.* at 319].  The ALJ referenced these complaints in his decision, but found that, according to those same notes, Plaintiff "had full strength in her upper and lower extremities as well as normal sensation and reflexes."  *See* [Doc. 10-2 at 20 (citing [Doc. 10-7 at 320])].  In addition, the ALJ found that the record demonstrated that Plaintiff was progressing in physical therapy.  [*Id.* (citing [Doc. 10-7 at 706-50])]; *see also* [Doc. 10-7 at 740 (reporting pain on Plaintiff's third physical therapy visit); *id.* at 715 ("Pt able to perform all exercises well with limited symptom provocation" on fourteenth visit); *id.* at 710 (at Plaintiff's sixteenth visit, noting "progressing with restoration of shoulder mechanics, increased pain at end range.")].  The ALJ

---

[10] To the extent Plaintiff argues that her cervical neck impairments "did not improve after surgery . . . though the ALJ found they had," [Doc. 11 at 12], this court is not permitted to reweigh the evidence that was before the ALJ.  *Smith*, 821 F.3d at 1266.

limited Plaintiff to only "frequently" reaching, handling, fingering, feeling, and operating hand controls "[b]ecause of the diminished range of motion in her left shoulder and observations that she has limited use of her right arm." [*Id.*].

The limited inquiry before the court is whether the ALJ's decision is supported by substantial evidence. With respect to Plaintiff's ability to frequently reach, handle, finger, or feel, the ALJ cited conflicting record evidence, reconciled that conflict, and explained the basis for his conclusion.[11] The court is satisfied that this determination is based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070. *See Thompson v. Kijakazi*, No. 1:20-cv-00439-KRS, 2021 WL 4307296, at *8 (D.N.M. Sept. 22, 2021) (where the ALJ cited "other medical evidence of record in determining [the] RFC for reaching, handling, fingering, and feeling," this was "enough to find that substantial evidence supports the ALJ's conclusions."); *Berzins v. Berryhill*, No. 17-cv-02685-KLM, 2019 WL 1292862, at *10 (D. Colo. Mar. 21, 2019) (finding no error where "[t]he ALJ repeatedly referenced and cited to evidence of these impairments as he canvassed the record and summarized the effects of Plaintiff's asserted impairments in order to determine Plaintiff's RFC."). "[I]t is the ALJ's (not the court's) responsibility to resolve evidentiary inconsistencies." *Ojeda Perez v. Commissioner*, No. 18-cv-01464-NYW, 2019 WL 6769859, at *7 (D. Colo. Dec. 12, 2019). So long as substantial

---

[11] Insofar as Plaintiff asserts that "there is no RFC narrative of how 'frequent' upper extremity manipulation was proved in the first place," [Doc. 11 at 13], the court finds no basis for reversal here. As explained throughout this order, it is Plaintiff's burden at step four, not the Commissioner's. *Neilson*, 992 F.2d at 1120. And in any event, the court is satisfied that the ALJ provided a sufficient narrative explanation for this RFC determination, as the discussion "describe[es] how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013).

evidence supports the ALJ's decision—which the court finds that it does—the court cannot second guess the Commissioner's decision.[12]

## IV.  Medical Source Statements

Finally, Plaintiff argues that the ALJ erred in finding that the limitation opinions of four medical sources were unpersuasive.  [Doc. 11 at 14].[13]  In assessing a claimant's RFC, the ALJ must address the record's medical source opinions.  *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015).  The Social Security Regulations provide that an ALJ must evaluate the persuasiveness of a medical opinion using the following factors: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship, and whether the treatment relationship is an examining

---

[12] In the alternative, Plaintiff argues that "[a] reduced range of sedentary work with bilateral upper extremity limitations invokes the regulation requiring 'careful consideration' of the medical evidence."  [Doc. 11 at 11 (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 2)].  She further asserts that "[t]he ALJ did not give full consideration, much less careful consideration to the favorable medical evidence."  [*Id.*].  Insofar as Plaintiff suggests that there is a legal standard requiring "careful consideration" of the medical evidence here due to the circumstances of this case, Plaintiff is incorrect.  The regulation cited by Plaintiff states that "**as with any case**, a finding that an individual is limited to less than the full range of sedentary work will be based on careful consideration of the evidence of the individual's medical impairment(s) and the limitations and restrictions attributable to it."   20 C.F.R. § Pt. 404, Subpt. P, App. 2, §200.00(h)(4) (emphasis added).  In other words, every case requires careful consideration of the medical evidence; the applicable regulations do not set forth any heightened standards due to Plaintiff's "advanced age." *See* [Doc. 11 at 11].

[13] Plaintiff's brief largely highlights the record evidence and asks the court to reweigh the evidence, rather than identify specific errors in the ALJ's decision. *See, e.g.*, [Doc. 11 at 15 ("This limitation amount[s] to less than occasional ability, not frequent."); *id.* ("[Plaintiff's] limitations were not nondurational as they continued into late August 2020"); *id.* at 17 ("The evidence clearly shows [Plaintiff's] inability to reach and operate hand controls on a 'frequent' basis."); *id.* at 19 ("There is nothing in the PT notes that shows improvement to the extent the ALJ claimed, and [the notes] do not show that [Plaintiff's] limitations were nondurational post-surgery.")].  The court cannot reweigh the evidence that was before the ALJ.  *Smith*, 821 F.3d at 1266.  Accordingly, the court limits its analysis to only those arguments identifying alleged errors in the ALJ's decision.

relationship; (4) the medical source's area of specialization; and (5) other factors "tending to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c); *Pearson v. Saul*, No. 20-cv-01808-NRN, 2021 WL 2549214, at *3 (D. Colo. June 22, 2021). The Regulations provide that the factors of supportability and consistency "are the most important factors" to consider "when [the ALJ] determine[s] how persuasive [the ALJ] find[s] a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). The ALJ is therefore required to explain in the final decision how he or she considered the supportability and consistency of a medical source's opinion, and "may, but [is] not required to, explain how [the ALJ] considered the [remaining factors], as appropriate." *Id.*

Plaintiff first challenges the ALJ's conclusion that the opinions of Dr. Larry Stark and Nurse Jackie Olvera were unpersuasive. *Id.* According to Plaintiff, the ALJ either failed to consider or rejected medical evidence that supported these providers' decisions, in favor of evidence setting out L.A.M.'s daily activities or "overall normal exams." [*Id.*]. Plaintiff suggests that it was error for the ALJ to rely on Plaintiff's daily activities in finding the opinions of Dr. Stark and Nurse Olvera unpersuasive because "[d]aily activities cannot be [deemed] substantial evidence to deny a claim because they are not sustainable for working fulltime." [*Id.* at 16]. In addition, Plaintiff asserts that the ALJ improperly relied upon "mass-citation of record exhibits" and failed to provide "proof a reasonable mind would accept as adequate to support [his] conclusion[s]." [*Id.* at 15-16].

The court respectfully disagrees with Plaintiff. With respect to Dr. Stark, who opined on July 1, 2019 that Plaintiff could not bend, push, pull, or lift anything exceeding ten pounds and could not work, [Doc. 10-7 at 487], the ALJ stated that "[w]hile Dr. Stark's opinion is supported by the limitations the claimant needed to recover[] from surgery, it is inconsistent with the

remainder of the record." [Doc. 10-2 at 22]. In support, the ALJ noted that (1) Plaintiff's recent physical exams were "normal overall," which the ALJ determined was inconsistent with Dr. Stark's finding that Plaintiff could not bend, push, or pull; (2) the Plaintiff's ability to care for her girlfriend and father was inconsistent with Dr. Stark's "highly restrictive" limitations; and (3) the limitations were non-durational and did not reflect Plaintiff's capabilities. [*Id.*]. Meanwhile, Nurse Olvera opined on February 25, 2020 that L.A.M. could use her left hand, bend, reach, or stoop less than occasionally. [Doc. 10-7 at 675-76]. Nurse Olvera further stated that L.A.M.'s impairments precluded an eight-hour workday. [*Id.* at 675]. In his decision, the ALJ found these opinions not persuasive on the basis that they were inconsistent with Plaintiff's daily activities and physical examinations. [Doc. 10-2 at 22].

Based on a review of the ALJ's decision and the record evidence, the court concludes that the ALJ's decision was supported by substantial evidence. After Dr. Stark's July 2019 opinions and Nurse Olvera's February 2020 opinions, medical records demonstrated that Plaintiff had full strength, normal muscle tone and bulk, and a normal range of motion. *See, e.g.*, [Doc. 10-7 at 599 (on November 29, 2019, Plaintiff was "full strength with effort"); Doc. 10-8 at 842-44 (on September 11, 2020, Plaintiff had "[n]ormal range of motion" in neck); *id.* at 855-58 (on July 17, 2020, Plaintiff had "[n]ormal range of motion" in neck); id. at 762-64 (on March 16, 2020, Plaintiff had normal muscle tone and bulk)].[14] The ALJ cited to this evidence in his discussions of Plaintiff's physical symptoms and limitations. *See* [Doc. 10-2 at 17, 18, 20, 21]; *see also Wade v. Colvin*, 26 F. Supp. 3d 1073, 1081 (D. Colo. 2014) ("[Plaintiff] improved over time and . . .

---

[14] Plaintiff argues that Ms. Martin "never received treatment" at the facility from which these notes were produced. [Doc. 11 at 21]. This goes to the weight of the evidence and cannot be considered by the court at this juncture. *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992).

gradually had become able to engage in more activity over the course of her treatment.").   Insofar as Plaintiff argues that the record evidence as a whole supports Dr. Stark's and Nurse Olvera's limitation opinions, *see* [Doc. 11 at 15-16], "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). "[T]he most important factors in evaluating persuasiveness are supportability and consistency," *Firth*, 2021 WL 1534532, at *3, and the ALJ considered these factors in weighing these providers' opinions.  [Doc. 10-2 at 22].

Insofar as Plaintiff argues that her activities of daily living do not support a finding of non-disability, *see* [Doc. 11 at 15-16], "[a]lthough the record also contains evidence that [Plaintiff's] daily activities are more limited [than what the ALJ found], the ALJ is in the best position to resolve such conflicts in the evidence." *Thomas*, 685 F. App'x at 661.  The inquiry before the court is not whether the court would have reached the same conclusion as the ALJ, but whether the ALJ's decision is supported by substantial evidence. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001).  Finally, insofar as Plaintiff argues that her daily activities "cannot be found as substantial evidence to deny a claim because they are not sustainable for working fulltime," daily activities are "precisely the type of evidence an ALJ should consider in determining a claimant's RFC." *McDonald v. Astrue*, 492 F. App'x 875, 886 (10th Cir. 2012).

Moreover, while the court generally agrees with Plaintiff that generalized citations to the record are unhelpful and likely "do not substantiate the ALJ's disability decision," *see Romo v. Colvin*, 83 F. Supp. 3d 1116, 1121 n.4 (D. Colo. 2015) (citing cases), the court nevertheless concludes that the ALJ adequately explained the bases for his conclusions.  More specifically, the court has not been left to speculate as to what specific evidence led the ALJ to his decision; in

other words, the ALJ's decision is not "beyond meaningful review." *Bussell v. Astrue*, No. 10-cv-509-FHM, 2011 WL 2441908, at *3 (N.D. Okla. June 14, 2011), *aff'd*, 463 F. App'x 779 (10th Cir. 2012). *See* [Doc. 10-2 at 22]; *see also Cowan*, 552 F.3d at 1185 ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Because the ALJ's findings that Dr. Stark's and Nurse Olvera's opinions were inconsistent with the record evidence and were thus unpersuasive are supported by substantial evidence, the court finds no reversible error here.

Next, Plaintiff challenges the ALJ's evaluation of the opinion of Dr. Beverly Costantini, a psychological consultative examiner. *See* [Doc. 11 at 20].[15]   In her examination notes, Dr. Costantini noted that Plaintiff reported complaints of pain, appeared to be in pain, and noted that it did not appear that Plaintiff was exaggerating her symptoms.  [Doc. 10-7 at 608-09].  Plaintiff argues that "[t]he ALJ did not consider this significantly probative evidence though he found [Dr. Costantini's] opinion persuasive," and "[t]hus, [the ALJ] did not resolve the inconsistency between fingering that [L.A.M.'s] allegations were not supported and [Dr. Costantini's] objective assessment of [her] genuine pain behaviors and accompanying limitations."  [Doc. 11 at 20].  In response, the Commissioner argues that "Dr. Costantini's observations are not a medical opinion that the ALJ was required to consider under 20 C.F.R. § 404.1520c."  [Doc. 14 at 15].

"A medical opinion is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" related to the ability to perform the physical or mental demands of work activity, to perform other demands of work, and to adapt to environmental conditions.  20 C.F.R. § 404.1513(a)(2).  In other words, a statement that does not describe what

---

[15] Plaintiff refers to Dr. Costantini as "Dr. Costini" in her brief.  *See* [Doc. 11 at 19-20].

the claimant can still do despite her impairments or whether the claimant has work-related restrictions does not constitute a "medical opinion." *Kubiak v. Kijakazi*, No. CIV-21-720-D, 2022 WL 2353077, at *4 n.6 (W.D. Okla. June 8, 2022), *report and recommendation adopted*, 2022 WL 2346401 (W.D. Okla. June 29, 2022); *cf. Koschnitzke v. Kijakazi*, No. CIV-20-645-AMG, 2022 WL 634217, at *4 (W.D. Okla. Mar. 3, 2022) (a statement that the claimant should continue to limit her exposure to the environment was not a medical opinion). Because Dr. Costantini's general observations about Plaintiff's complaints of pain and appearance do not discuss Plaintiff's limitations or abilities, they are not considered "medical opinions" the ALJ was not required to consider the supportability and consistency of these observations under 20 C.F.R. § 404.1520c, contrary to Plaintiff's suggestion. *See* [Doc. 11 at 20].[16]

Finally, Plaintiff asserts that the ALJ improperly rejected the opinion of Plaintiff's treating surgeon, Dr. Erik Curtis. [Doc. 11 at 20]. Dr. Curtis opined that L.A.M. is unable to return to work. [Doc. 10-7 at 633]. According to Plaintiff, "[t]he ALJ rejected this opinion because it was from a nongovernmental agency, and said no more about it," but the "rules require consideration of [this] evidence." [Doc. 11 at 20]. Plaintiff does not specify the rules she asserts the ALJ violated. *See* [*id.*].

The court disagrees that the ALJ was required to consider this opinion. The regulations provide that opinion statements that the claimant is able or not able to work—determinations which are reserved to the Commissioner—are "inherently neither valuable nor persuasive," and the ALJ is not required to "provide any analysis about how [the ALJ] considered such evidence in [his]

---

[16] Insofar as L.A.M. argues that the ALJ failed to properly consider this evidence under 20 C.F.R. § 44.1520b, *see* [Doc. 11 at 20], the court finds this argument waived. *Tietjen*, 527 F. App'x at 709. Plaintiff does not cite to any specific subsection of the cited regulation or explain how the ALJ failed to meet the requirements of the regulation. *See* [Doc. 11].

determination or decision." 20 C.F.R. § 404.1520b(c)(3)(i); *see also Foy v. Kijakazi*, No. CIV 20-1114 KBM, 2022 WL 1288474, at *14 (D.N.M. Apr. 29, 2022). Accordingly, the ALJ did not err in not discussing this opinion from Dr. Curtis.

In sum, Plaintiff has not demonstrated that the ALJ's decision is not supported by substantial evidence or that the ALJ committed reversible error in issuing his decision. As a result, the court **AFFIRMS** the Commissioner's decision.

### CONCLUSION

For the reasons stated herein, this court hereby **AFFIRMS** the Commissioner's final decision.

DATED:  August 4, 2022                         BY THE COURT:

                                               Nina Y. Wang
                                               United States Magistrate Judge